In the Matter of ROCHESTER GAS AND ELECTRIC CORPORATION, Petitioner, v NEW YORK STATE TAX COMMISSION, Respondent.

Third Department, May 28, 1987

## APPEARANCES OF COUNSEL

*Nixon, Hargrave, Devans & Doyle (William S. Brandt* of counsel), for petitioner.

*Robert Abrams, Attorney-General (Wayne L. Benjamin* and *Peter H. Schiff* of counsel), for respondent.

## OPINION OF THE COURT

CASEY, J.

Petitioner, an electric, gas and steam utility, seeks to annul a determination of respondent which ruled that three transactions involved the purchase of services subject to sales tax under Tax Law § 1105 (c) (5). The statute imposes a sales tax upon the sale of the following services\*: "Maintaining, servicing or repairing real property, property or land, as such terms are defined in the real property tax law, whether the services are performed in or outside of a building, as distinguished from adding to or improving such real property, property or land, by a capital improvement as such term capital improvement is defined in paragraph nine of subdivision (b) of section

---

\* Petitioner has a direct payment permit which authorizes it to pay sales taxes on its purchases of property and services directly to the Department of Taxation and Finance.

eleven hundred one of this chapter, but excluding services rendered by an individual who is not in a regular trade or business offering his services to the public, and excluding interior cleaning and maintenance services performed on a regular contractual basis for a term of not less than thirty days, other than window cleaning, rodent and pest control and trash removal from buildings" (Tax Law § 1105 [c] [5]).

The first transaction at issue involves the removal of fly ash from petitioner's facilities, which produce thousands of tons of fly ash each year. The fly ash, a by-product of the combustion of coal used by petitioner in the generation of electricity, is required to be collected as an air pollution control measure (see, 6 NYCRR part 227). After the fly ash is trapped and collected at the generating plants, it is hauled to landfills by independent truckers retained by petitioner. The challenged sales tax was imposed upon the cost of this service.

■ Petitioner raises a number of arguments concerning the removal of fly ash, but our examination of its restated petition to respondent and the hearing transcript reveals that the only argument presented at the administrative level was petitioner's claim that the transaction involved a transportation service which is either exempt from sales tax or not included in the statutory definition of taxable services. Respondent rejected this claim, concluding that the service fell within the category of trash removal and, therefore, was a maintenance service within the meaning of Tax Law § 1105 (c) (5). The record reveals that, unlike the cases cited by petitioner, the service at issue was not the transportation of a useful product from one location to another; rather, the service was for the removal of a waste product, the bulk of which was taken to landfills and discarded.

In *Matter of Cecos Intl. v State Tax Commn.* (126 AD2d 884), the operator of a waste treatment facility imposed a freight charge upon its customers for the cost of the transportation of their chemical waste to the waste treatment facility by independent carriers retained by the operator. This court sustained a determination of respondent which ruled that transportation of the chemical waste constituted a taxable trash removal service *(supra).* We see no reason to reach a contrary result here merely because petitioner, and not the landfill operator, retained the independent carriers. In both cases, the purpose of the services found to be taxable was the removal of industrial waste by-products. Respondent's determination that

the fly ash hauling was a trash removal service must, therefore, be confirmed.

Next, petitioner objects to respondent's determination insofar as it ruled that the installation of new superheater units in two of petitioner's boilers was a repair to real property taxable under Tax Law § 1105 (c) (5). Petitioner's argument, here and at the administrative level, is that the replacement of the superheater units constituted a capital improvement, in the same manner that the replacement of a roof on a building would be treated as a capital improvement, not a repair. Petitioner relies upon the statutory definition in Tax Law § 1101 (b) (9), which provides:

"Capital improvement. An addition or alteration to real property which:

"(i) Substantially adds to the value of real property, or appreciably prolongs the useful life of the real property; and

"(ii) Becomes part of the real property or is permanently affixed to the real property so that removal would cause material damage to the property or article itself; and

"(iii) Is intended to become a permanent installation."

■ Respondent concluded that the installation of the new superheater units was not a capital improvement based upon its finding that removal of the units caused no real damage to the boilers. While there is substantial evidence in the record to support this factual finding, the finding alone is insufficient to support the respondent's conclusion. Petitioner presented proof that the superheater installation was a major project costing some $140,000 and that the superheaters, which became an integral part of the boilers, would last 15 to 20 years. There was also proof that the superheaters, consisting of a series of tubing, were permanently welded into place at the top of the boilers after the old tubing had been cut and removed. Thus, petitioner presented prima facie proof to establish that each of the three statutory conditions for a capital improvement had been met. Since respondent elected to rely upon its ruling with respect to only one of these three conditions in making its determination on the repair/capital improvement issue, the validity of the determination depends upon the rationality of that ruling and not upon the rationality of what respondent could have ruled with respect to the other two conditions (see, Matter of Consolidated Edison Co. v Public Serv. Commn., 63 NY2d 424, 441, appeal dismissed 470 US 1075). The condition relied upon by respondent is written

in the disjunctive. Thus, despite a finding that removal of the superheaters would not materially damage the boilers, the condition could be fulfilled if the superheaters became part of the real property *or* the removal of the superheaters would cause material damage to the superheaters themselves *(see,* Tax Law § 1101 [b] [9] [ii]). Since removal could be effected only by cutting the series of tubing that make up the super-heaters, there can be little doubt that material damage to the superheaters would result. More importantly, upon installa-tion, the superheaters became an integral part of the boilers and an integral part of the power-generating apparatus. Thus, by definition, they became part of the real property (20 NYCRR 527.7 [a] [2] [vi]; Real Property Tax Law § 102 [12] [f]). Accordingly, respondent's determination that the installation of the superheaters constituted a taxable repair to real prop-erty must be annulled.

▮ Petitioner's final objection is directed at respondent's determination concerning the refueling of petitioner's nuclear reactor. Petitioner contends that installation of the nuclear fuel was an integral part of the purchase of the fuel which is exempt under Tax Law § 1115 (c). The record, however, con-tains substantial evidence to support respondent's finding that the installation of the fuel, described by petitioner's witness as "a very highly skilled job" which required the hiring of specialists other than the sellers of the fuel, was sufficiently independent of the purchase of fuel to be treated as a separate transaction. We find nothing irrational in respondent's ruling that this fuel installation transaction was a maintenance service to real property taxable under Tax Law § 1105 (c) (5), since the transaction related to keeping the nuclear power plant in a condition of fitness, efficiency, readiness or safety *(see,* 20 NYCRR 527.7 [a] [1]). Accordingly, the determination as to installation of nuclear fuel should be confirmed.

MAIN, J. P., MIKOLL, YESAWICH, JR., and LEVINE, JJ., con-cur.

Determination modified, without costs, by annulling so much thereof as ruled that the installation of superheater units constituted a repair to real property subject to sales tax under Tax Law § 1105 (c) (5); matter remitted to respondent for further proceedings not inconsistent herewith; and, as so modified, confirmed.